IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TREY ANDERSON,

            Plaintiff,

v.                                        C.A. No. 16-479-LPS

DELAWARE STATE UNIVERSITY and
SONJA JACKSON-McCOY,

            Defendants.

---

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, DE

    Attorney for Plaintiff.

James D. Taylor, Jr., Gerard M. Clodomir, SAUL EWING LLP, Wilmington, DE

    Attorneys for Defendants Delaware State University and Sonja Jackson-McCoy.

**MEMORANDUM OPINION**

September 18, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court are Defendants' partial motions to dismiss filed in response to Plaintiff's Complaint and First Amended Complaint. (D.I. 7, 10) Defendants' first motion (D.I. 7) will be denied as moot. Their second motion seeks dismissal of Counts I and II of Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted. (D.I. 10) For the following reasons, the Court will grant Defendants' partial motion to dismiss Plaintiff's amended complaint (D.I. 10).

I. BACKGROUND

In August of 2015, Plaintiff Trey Anderson ("Plaintiff") met with Sonja Jackson-McCoy ("McCoy"), the Senior Associate Athletic Director for Academic Services at Delaware State University ("DSU"), to discuss DSU's Masters in Sports Administration and Graduate Assistant Program (the "Program"). (D.I. 9 at ¶ 7) McCoy extended an offer of enrollment to Plaintiff in the one-year, four-semester Program, which includes a fall, spring, and two summer semesters. (D.I. 9 at ¶¶ 10-11) McCoy also offered Plaintiff financial aid from DSU to cover Plaintiff's tuition, housing, and incidental expenses like textbooks for the duration of the Program. (D.I. 9 at ¶ 8) Additionally, McCoy offered Plaintiff employment as a Graduate Assistant within DSU Academic Services for the duration of the Program. (D.I. 9 at ¶ 9) Plaintiff accepted McCoy's offer, moved to Delaware, and began studying and working as a Graduate Assistant in the fall semester of 2015. (D.I. 9 at ¶ 13)

During the spring semester of 2016, DSU informed Plaintiff that it would not be paying for Plaintiff's summer 2016 tuition and textbook expenses (the "Financial Aid"). (D.I. 9 at ¶ 15) Plaintiff remained enrolled in the Program, but DSU did not pay the Financial Aid. (D.I. 9 ¶ 18)

1

At no point did DSU provide Plaintiff a hearing or other "legitimate opportunity" to oppose its revocation of Financial Aid. (D.I. 9 at ¶ 19) On March 22, 2015, McCoy terminated Plaintiff from his position as a Graduate Assistant at DSU. (D.I. 9 at ¶ 30) Plaintiff received no notice of, explanation for, or opportunity to oppose his termination. (D.I. 9 at ¶ 31)

On June 23, 2016, Plaintiff filed this suit against DSU and McCoy (collectively, "Defendants"). (D.I. 1) Defendants filed their first partial motion to dismiss on September 9, 2016. (D.I. 7) In response, Plaintiff timely filed a First Amended Complaint (the "Amended Complaint") on September 13, 2016. (D.I. 9; *see* Fed. R. Civ. P. 15(a)(1)(B) (permitting party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)")) Count I of Plaintiff's Amended Complaint alleges that McCoy, in her individual and official capacities, violated 42 U.S.C. § 1983 by causing DSU to discontinue Plaintiff's Financial Aid without due process. (D.I. 9 at ¶¶ 33-42) Count II alleges that McCoy, in her individual capacity only, violated 42 U.S.C. § 1983 by terminating Plaintiff's employment with DSU as a Graduate Assistant without due process. (D.I. 9 at ¶¶ 44-47) Defendants moved to dismiss both counts. (D.I. 10)

### III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

2

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV. DISCUSSION

Plaintiff alleges that McCoy, and, at her direction, DSU, deprived Plaintiff of two protected property interests – Plaintiff's continued receipt of Financial Aid and continued employment with DSU as a Graduate Assistant – without due process.

3

The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. When a plaintiff sues under 42 U.S.C. § 1983 based on a state actor's alleged failure to provide procedural due process, courts engage in a two-step analysis. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). First, courts must determine "whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property." *Id.* (internal quotation marks omitted). If so, courts ask "whether the procedures available provided the plaintiff with due process of law." *Id.*

Property interests are not created by the Constitution. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, "[t]he plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation or arising from government policy or a mutually explicit understanding between [the parties]." *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir. 1993).

Plaintiff does not contend that his property interests arise from Delaware law or state regulations. Plaintiff relies solely on his oral agreement with McCoy and the mutually explicit understandings of the parties to establish his claimed interests. The Court will take up each of Plaintiff's asserted property interests in turn.

1. **Count I: Financial Aid**

Plaintiff alleges that Defendants violated his due process rights by depriving him of his property interest in the continued receipt of Financial Aid from DSU without sufficient process. Defendants argue that Count I must be dismissed because Plaintiff has failed to allege a protected property interest based on either Plaintiff's agreement with McCoy or the mutually explicit

4

understandings of the parties.

State contract law can give rise to a protected property interest. *See Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989). However, "not every interest held by virtue of a contract [with the state] implicates" procedural due process. *Id.*; *see also id.* (stating that to hold otherwise would constitute a "wholesale federalization of state public contract law . . . far afield from the great purposes of the due process clause"). Courts have recognized two major categories of contract rights constituting "property protected under the Fourteenth Amendment: (1) where 'the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits'; or (2) where 'the contract itself includes a provision that the state entity can terminate the contract only for cause.'" *Linan-Faye Constr. Co. v. Hous. Auth. of Camden*, 49 F.3d 915, 932 (3d Cir. 1995) (quoting *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)). "In all cases, the relevant inquiry is whether the claimant has a 'legitimate claim of entitlement.'" *Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 126 (3d Cir. 1985) (quoting *Roth*, 408 U.S. at 577).

Defendants argue that Plaintiff's oral agreement with McCoy concerning the Financial Aid does not fall into either category. First, Defendants argue – and Plaintiff does not seem to contest – that the agreement did not confer on Plaintiff a protected status, as the benefits at issue do not rise to the level of "extreme dependence" and were too far from permanent. Further, Defendants emphasize that DSU's Financial Aid Guide (the "Guide") – the only written document Plaintiff relies on in support of his claim – states, "All financial awards are subject to change," showing that any contract Plaintiff had with DSU was not only terminable for cause.

5

(D.I. 9 at ¶ 24)

The Court agrees with Defendants. While undoubtedly an important interest to Plaintiff, Plaintiff's interest in DSU's continued payment of his Financial Aid is not "characterized by a quality of either extreme dependence ... or permanence." *Unger*, 928 F.2d at 1392. Additionally, Plaintiff has not alleged any statements by McCoy informing Plaintiff that his Financial Aid could only be terminated for cause, and the Guide makes clear that all financial aid awards are subject to change without cause. Plaintiff's argument that by listing "[t]he most common reasons for adjusting aid," the Guide therefore made all financial aid agreements terminable "if and only if an event described in the same paragraph occurs" (D.I. 12 at 6) is unpersuasive. Merely listing the "most common reasons" for changing financial aid awards does not negate the Guide's unqualified statement that "[a]ll awards are subject to change." (D.I. 9 at ¶ 24) Without more, Plaintiff has insufficiently pled facts giving rise to a reasonable inference that his agreement with DSU concerning his Financial Aid contained a provision that it was terminable for cause only.

Plaintiff also contends that he had a protected property interest based on a mutually explicit understanding he had with Defendants. In response, Defendants argue that Plaintiff has not alleged any statements made by McCoy to Plaintiff or any written policies by DSU that could be said to have created a mutually explicit understanding that Plaintiff's Financial Aid award would not be unilaterally changed or rescinded before completion of the Program.

In support of his claim that such an understanding existed, Plaintiff relies, in large part, on "common sense and [what is] generally understood in our society" about how large universities like DSU handle their financial aid programs. Such "bald assertions" cannot

6

establish that Plaintiff has a property interest protected by the Due Process Clause. *See Sanguigni v. Pittsburgh Bd. of Public Educ.*, 968 F.2d 393, 401 (3d Cir. 1992) (holding that plaintiff's "conclusory allegation" that she had property interest based on "past [hiring] practices of the School District . . . . without more [was] plainly insufficient to satisfy [the] requirement that claims [alleging violations of § 1983] be pled with some specificity"). Rather, Plaintiff must point to specific statements or documents giving rise to the parties' mutually explicit expectation. See *Perry v. Sinderman*, 408 U.S. 593, 599-602 (1972) (holding that "unusual provision" in college's faculty guide, coupled with other university guidelines, created mutual expectation of continued employment between untenured professor and college); *Stana*, 775 F.2d at 126 (holding that provision of Pennsylvania Public School Code, written policies of Pittsburgh School District, and specific statements made by school officials to plaintiff had created mutually explicit expectation of continued placement on employment eligibility list).

While Plaintiff alleges it was "generally understood between Plaintiff, McCoy, and DSU officials that Financial Aid offered by DSU could not be revoked arbitrarily," Plaintiff fails to point to any specific source of that understanding. (D.I. 9 at ¶ 26) Plaintiff has not alleged that McCoy made statements to him during their meeting guaranteeing such protection, and the only document Plaintiff refers to in support of his claim is the Guide. Again, however, the Guide specifically warns students that "[a]ll [financial aid] awards are subject to change." (D.I. 9 at ¶ 24) Plaintiff has failed to plead any more than a "unilateral expectation" in the continued receipt of the Financial Aid. The Court will therefore grant Defendants' motion to dismiss Count I of the Amended Complaint.

## 2. Count II: Employment as a Graduate Assistant

Plaintiff alleges that Defendants violated his rights by terminating his employment with DSU as a Graduate Assistant without due process. Defendants move to dismiss Count II on the ground that Plaintiff did not have a protected property interest in continued employment with DSU.

State law determines whether a property interest in state employment exists. *See Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Such an interest "exists where an employee has a legitimate claim of entitlement to such employment under state law, policy, or custom. An employee, however, must have more than an abstract . . . unilateral expectation" in the employment. *Sanguigni*, 968 F.2d at 401. In Delaware, a "heavy presumption" exists that all state employees are employed at-will, "unless otherwise expressly stated." *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001). "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment." *Elmore*, 399 F.3d at 282 (citing *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988)).

Plaintiff's allegations concerning his employment agreement with DSU fail to overcome the "heavy presumption" that such contracts are at-will unless specifically stated. Plaintiff has not alleged any statements made by McCoy – or any other DSU official – informing Plaintiff that he could only be terminated for cause, nor does Plaintiff allege any DSU rule or written policy that could be viewed as securing his employment as a Graduate Assistant as terminable only for cause. Accordingly, Plaintiff has failed to plead facts that would give him a "legitimate entitlement" to continued employment at DSU protected by the Due Process Clause. *Id.*

Apart from his purported oral agreement with McCoy, Plaintiff contends that the parties'

8

mutually explicit expectations created a property interest in his continued employment. But all Plaintiff alleges in support of this argument is that McCoy offered Plaintiff employment for a definite period of time, which was to run in conjunction with his schooling. These assertions fall short of showing the parties shared any explicit expectation regarding Plaintiff's employment and the conditions under which he could be terminated. *See Latessa v. N.J. Racing Comm'n*, 113 F.3d 1313, 1318 (3d Cir. 1997) (stating that "very generalized testimony" about what "generally speaking" was sufficient to continue being employed could not prove "a specific bilateral understanding" between parties). Additionally, Plaintiff points to no rules or regulations – either of the state of Delaware or DSU – that speak to Plaintiff's employment. The Court therefore holds that Plaintiff has failed to allege facts indicating that his employment with DSU falls within the ambit of those property interests protected by the Due Process Clause.

Because Plaintiff has failed to allege a constitutionally protected property interest in either the continued receipt of his Financial Aid or employment, the Court need not reach the issue of McCoy's qualified immunity.

## V. CONCLUSION

For the reasons given above, Defendants' initial motion to dismiss (D.I. 7) will be denied as moot, and Defendants' motion to dismiss in response to Plaintiff's amended complaint (D.I. 10) will be granted. An appropriate Order follows.